R.K. TANNER ASSOCIATES LLP
Rod K. Tanner (SBN 195479)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
Tel: (650) 931-2520
Fax: (650) 931-2521
rtannerlaw@comcast.net

Counsel for Defendants BAY AREA EQUITY
GROUP, LLC; ANTO KABAJOUZIAN;
And LISA NAVA

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LAWRENCE BROOKS and DARLENE LEONG, individually and as trustees of The 2003 Brooks/Leong Trust; and LRB's DIRECT, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BAY AREA EQUITY GROUP, LLC, a limited liability company; ANTRANIK KABAJOUZIAN, an individual; TERRANCE BROWN, an individual; LISA NAVA, an individual; ADRIENNE ROCHE, an individual; and DEREK SCHNEIDER, an individual,<br><br>Defendants. | Case No.: CV 13-03325-PSG<br><br>Date: October 15, 2013<br>Time: 10:00 a.m.<br>Dept.: 5<br>Judge: Hon. Paul S. Grewal<br><br>**DEFENDANTS BAY AREA EQUITY GROUP, LLC, ANTO KABAJOUZIAN, AND LISA NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 15 , 2013 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the above-entitled Court located at 280 South First Street, San Jose, CA 95113, defendants Bay Area Equity Group, LLC ("BAEG") Anto Kabajouzian ("Kabajouzian") and Lisa Nava (collectively, "Defendants") will and hereby do move the Court pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) to dismiss the fifth claim for relief

(RICO Act claim) of the herein complaint, filed against them by Plaintiffs Lawrence Brooks and Darlene Leong (collectively, "Plaintiffs"), on the ground that the claim fails to state a claim upon which relief can be granted, and to thus dismiss the complaint in entirety for lack of federal subject matter jurisdiction.

This motion is supported by the following memorandum of points and authorities, and any oral argument permitted by the Court.

Dated:  September 6, 2013                      R.K. TANNER ASSOC. LLP

//s// Rod K. Tanner_____
_____
Rod K. Tanner, Counsel for
Bay Area Equity Group, LLC,
Anto Kabajouzian and Lisa Nava

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Defendants herein move the Court, pursuant to Federal Rule of Civil Procedure rule 12(b)(6) for an order that Plaintiffs' fifth claim for relief (RICO Act claim) be dismissed. Because that claim is the only federal question claim Plaintiffs raise, and because complete diversity of citizenship does not exist, Defendants further move for an order dismissing Plaintiffs' entire complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Defendants do not herein discuss Rule 12(b)(1) requirement because that defense may not be waived if not raised herein.  (*See* Fed. R. Civ. P. 12(h)(3); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873-874 (10th Cir. 1995).)  Further, "every federal court [] is obliged to notice want of subject matter jurisdiction." (*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 132 n.1 (1995).)  Thus, if this Court grants Defendants' motion to dismiss, as it should, it should also dismiss Plaintiffs' federal claim for lack of federal subject matter jurisdiction.

### II.     RELEVANT FACTS

A thirteen-cause federal complaint, replete with a RICO Act claim, seems an excessive and fervent amount of effort to expend for the $45,800 in unpaid rents Plaintiffs claim.  The

BAEG, KABAJOUZIAN, AND NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS

1  Court should fairly question whether the lure of RICO treble damages was the incentive for such
2  an inordinate amount of work.

3  Moreover, Plaintiffs obviously failed to conduct any precomplaint investigation in order
4  to know whether there exists a pattern of racketeering activity that would warrant a RICO Act
5  claim. Had they done so, they would have learned what they may already know – that their
6  experience with BAEG was due to some regrettable mistakes BAEG made as a startup, and the
7  "racketeering activity" they allege simply does not exist.

8  Such is the power of the lure of treble damages.

### III.   ISSUE PRESENTED

10  Plaintiffs do not state a RICO Act claim upon which relief can be granted where: 1) they
11  base their claim on predicate acts of mail fraud and wire fraud and fail to plead those acts with
12  the specificity required by Rule 9(b); and 2) fail to allege or show the necessary element of a
13  pattern of racketeering activity.

### IV.   LAW AND LEGAL ANALYSIS

**A.   IT IS APPROPRIATE FOR THE COURT TO GRANT DEFENDANT'S MOTION TO DISMISS BECAUSE PLAITIFFS FAIL TO SET FORTH SUFFICIENT INFORMATION FOR THE COURT TO DETERMINE THAT THE ELEMENTS OF A RICO ACT CLAIM EXIST.**

Any defendant to a complaint, counterclaim, or crossclaim may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." (See Fed. R. Civ. P. 12(b)(6).)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) "The issue is . . . whether the claimant is entitled to offer evidence to support the claims." (*Cervantes v. City of San Diego*, 5 F.3d 1273, 1274-1275 (9th Cir. 1993).)

For Rule 12(b)(6) purposes, the court must accept the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor. (*Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996).) *However*, the pleading must at least set forth sufficient information

1  for the court to determine whether some recognized legal theory exists on which relief could be

2  accorded.  If it fails to do so, a motion under Rule 12(b)(6) will be granted.  (*See Wilson v. Civil

3  Town of Clayton*, 839 F.2d 375, 378 (7th Cir. 1988).)   Thus, a court has no "duty to liberally

4  construe a plaintiff's complaint . . . the equivalent of a duty to re-write it for [him]." (*Peterson v.

5  Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).)

6        Pursuant to Rule 9(b), *fraud must be lead with specificity*.  Dismissal under Rule 12(b)(6)

7  is proper *if the complaint lacks an allegation regarding an element necessary to obtain relief.*

8  (*Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).)  Here, Plaintiffs fail to

9  plead the predicate acts of mail fraud and wire fraud with the requisite specificity necessary to

10 state a claim for relief.  Further, Plaintiffs fail to sufficiently plead a pattern of racketeering

11 activity which is an element necessary to obtaining pursuant to a RICO Act claim.

**B.   PLAINTIFFS' RICO ACT CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE IT RELIES UPON PREDICATE OFFENSES OF WIRE FRAUD AND MAIL FRAUD WHICH ARE NOT PLEADED WITH REQUISITE SPECIFICITY.**

    **1.   FRCP Rule 9 Requires that Plaintiffs Plead a RICO Claim Predicated Upon Mail or Wire Fraud with Particularity.**

16 "Pursuant to Fed. R. Civ. P. 9(b), mail and wire fraud allegations in a RICO Act

17 complaint must be alleged with specificity." (*Lum v. Bank of America,* 361 F.3d 217, 223-224

18 (3rd Cir. 2004).)  As described by the *Lum* court:

> Where, as here, plaintiffs rely on mail and wire fraud as a basis for
> a RICO violation, the allegations of fraud must comply with
> Federal Rule of Civil Procedure 9(b), which requires that
> allegations of fraud be pled with specificity. See Saporito, 843
> F.2d at 673. In order to satisfy Rule 9(b), plaintiffs must plead with
> particularity the 'circumstances of the alleged fraud in order to
> place the defendants on notice of the precise misconduct with
> which they are charged, and to safeguard defendants against
> spurious charges of immoral and fraudulent behavior. [Citation.]
> Plaintiffs may satisfy this requirement by pleading the "date, place
> or time" of the fraud, or through "alternative means of injecting
> precision and some measure of substantiation into their allegations
> of fraud."

26 (*Id.*)

27       The Rule 9(b) particularity requirement "provides defendants with fair notice of the

28 plaintiffs' claims, protects defendants from harm to their reputation and goodwill . . . and

4       Case No. CV 13-03325

BAEG, KABAJOUZIAN, AND NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS

R.K. TANNER ASSOCIATES LLP
1099 S. Norfolk Street · Suite 350 · San Mateo · CA · 94403 · Tel 650.951.2520 · Fax 650.951.2521

1  prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs.

2  Ultimately, the question is what is required for a ticket to the federal discovery apparatus."

3  (*United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).)

4        The particularity rule is also "meant to . . . protect defendants from 'spurious charges of

5  immoral and fraudulent behavior." (*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d

6  439, 445 (6th Cir. 2008) (internal punctuation omitted).)

7        "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud,

8  the rule requires the plaintiff to *conduct a precomplaint investigation* in sufficient depth to assure

9  that the charge of fraud is responsible and supported, rather than defamatory and extortionate."

10  (*Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (emphasis

11  added.)

12        The rule discourages claimants *from tossing accusations of fraud into pleadings "in

13  order to induce advantageous settlements* or for other ulterior purposes," (*Bankers Trust Co. v.

14  Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992),) and prohibits claimants from filing

15  suit before searching for a specific cause of action grounded in fraud, (*Hayduk v. Lanna*, 775

16  F.2d 441, 443 (1st Cir. 1985).)

17        Here, Plaintiffs make an attempt to satisfy this requirement by citing five written

18  communications they received from Defendants. (Compl. ¶¶ 109-113.) However, none of the

19  citations attempt to explain why or how the writings constitute fraudulent activity.

20        Paragraph 109, for example, alleges only that BAEG sent Plaintiffs notices that that the

21  cost of extending rental income protection and home warranty plans would be greater than

22  during the first 12 months of Plaintiffs' ownership. Plaintiffs do not explain how they believe

23  that to entail fraud, especially because they acknowledge that the plans were guaranteed by

24  contract only for the first 12 months.

25        Paragraph 110 alleges that Brown confirmed the date and time of a meeting via email,

26  and further alleges that Brown did not have all the documents at the meeting he promised to

27  have. However, the paragraph does not allege that Brown made that promise via mail or wire.

28

BAEG, KABAJOUZIAN, AND NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS

1   Paragraph 111 alleges that Kabajouzian sent an email to Plaintiffs promising to pay
2   unpaid rents, and apologizing that vandalized properties had gone undetected.  Plaintiffs do not
3   allege either of these representations are fraudulent, and they are not so on their faces.
4   Paragraph 112 alleges only that that defendant Roche emailed plaintiff Brooks purchase
5   agreements and projected investment documents.
6   Paragraph 113 alleges that Roche sent Brooks and email informing him that one of the
7   properties he selected was no longer available, and offering a substitute property.
8   None of these allegations can be fairly said to plead with specificity how the alleged
9   communications constitute fraud, which specificity is required by Rule 9(b).  In fact, Plaintiffs'
10  attempts to support its claim of racketeering activity with only these five emails supports
11  Defendants' premise that Plaintiffs are using "kitchen sink" pleading in order to embark on a
12  fishing expedition, and "tossing in" a RICO claim in order to obtain a "ticket to federal
13  discovery," and a chance to grab that golden ring of treble damages.

### 2. Plaintiffs fail to show that the predicate acts upon which they rely were a proximate cause of their damages.

Moreover, "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense:

> not only was a 'but for' cause of his injury, but was the proximate cause as well.  Proximate cause for RICO purposes [] should be evaluated in light of its common-law foundations: proximate cause thus requires some direct relation between the injury asserted and the injurious conduct alleged.  A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient.

(*Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (U.S. 2010).)

Plaintiffs claim that they were damaged by non-payment of rents.  Although they plead a great number of "empathy allegations," at its core, their claim is for unpaid rents.  Yet, Plaintiffs make no attempt to show or explain how the five acts of alleged "mail and wire fraud" discussed above in any way proximately caused their damages.  Their damages were, in fact, caused by unforeseen operational costs and resulting cash flow problems, not by defendant Roche sending

BAEG, KABAJOUZIAN, AND NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS

1  plaintiff Brooks some purchase agreements.  It seems patently obvious that Plaintiffs are

2  claiming RICO only in an attempt to obtain treble damages.

3  **C.    PLAINTIFFS' RICO ACT CLAIM FAILS TO STATE A CLAIM UPON WHICH
       RELIEF CAN BE GRANTED BECAUSE IT FAILS TO SHOW THE
4      NECESSARY ELEMENT OF A PATTERN OF RACKETEERING ACTIVITY.**

5       A core element of a claim for a RICO Act claim is a pattern of racketeering activity (or,

6  alternatively, a collection of an unlawful debt).    (*H.J. Inc. v. Northwestern Bell Telephone Co.*,

7  492 U.S. 229, 232 (1989).)  The RICO Act defines a "pattern of racketeering activity" as "at

8  least two acts of racketeering activity [the first] of which occurred within ten years ... after the

9  commission of a prior act of racketeering activity."  However, the U.S. Supreme Court holds that

10  a "pattern of racketeering" requires substantially more, i.e., continuity and relatedness.  (*Id.* at

11  236-237 (1989).)

12     **3.    Plaintiffs allege only the obligatory "at least two acts of racketeering
            activity," then merely rely upon the conclusory allegation that Defendants
13          acts "pose a threat of continuing racketeering activity.  (Compl. ¶ 104.)**

14      Regarding relatedness, "criminal conduct forms a pattern if it embraces criminal acts that

15  have the same or similar purposes, results, participants, victims, or methods of commission, or

16  otherwise are interrelated by distinguishing characteristics and are not isolated events." (*Id).*,

17  quoting 18 U.S.C. §3575(e). "Continuity," in turn, "is both a closed- and open-ended concept,

18  referring either to a closed period of repeated conduct, or to past conduct that by its nature

19  projects into the future with a threat of repetition." (*Id.)*

20      For plaintiffs alleging "closed-ended" continuity, the circuit courts have generally

21  dismissed claims alleging schemes that lasted for less than a year:

22
> [The] circuits have [generally] agreed that the substantial period of
23  time requirement for establishing closed-ended continuity cannot
> be met with allegations of schemes lasting less than a year. *See,
24  e.g., Efron v. Embassy Suites (P. R.), Inc.,* 223 F.3d 12 (1st Cir.
> 2000) (no closed-ended continuity where predicate acts occurred
25  over 21-month period); *Cofacredit, S.A. v. Windsor Plumbing
> Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (Second Circuit has
26  never held a period of less than two years to constitute a
> 'substantial period of time'); *GICC Capital Corp. v. Tech. Fin.
27  Group, Inc.*, 67 F.3d 463, 467-68 (2d Cir. 1995) (courts of appeals
> have consistently considered eleven months to be insufficiently
> 'substantial'); *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d
28  594, 611 (3d Cir. 1991) ('twelve months not a substantial period of

time'); *Menasco v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (no continuity when predicate acts with a single goal occurred over a one-year period); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) (seventeen month period insufficient to show continuity); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (thirteen months not a substantial period of time); *Wisdom v. First Midwest Bank of Polar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999) (ten-month period is 'too short' to constitute substantial period for purposes of closed-ended continuity); <u>Religious Tech. Ctr. v. Wollersheim</u>, 971 F.2d 364, 366-67 (<u>9th Cir</u>. 1992) ("We have found no case in which a court [of appeals] has held the [continuity] requirement to be satisfied by a pattern of activity lasting less than a year.").

*(Jackson v. Bellsouth Telecommunications, 372 F.3d 1250, 1266-1267 (11th Cir. 2004 (emphasis added)).*

    **4.**    **Plaintiffs have not alleged or shown that the "pattern of racketeering" they claim is anything more than the result of relatively short-lived startup errors made by BAEG in the course of introducing a unique concept for which it had no model to follow, which errors affected only early purchasers .**

To establish open-ended continuity, "the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." (*Cofacredit, supra*, 187 F.3d at 242 (*citing H.J., Inc.*, 492 U.S. at 242-43, 109 S. Ct. 2893).)

"[C]ases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed." *GICC Capital Corp.*, *supra,* 67 F.3d at 466 (collecting cases).  In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant.  *See Cofacredit*, *supra,* 187 F.3d at 242; *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 97 (2d Cir.1997); *GICC Capital Corp.*, *supra,* 67 F.3d at 466.  *Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity.  See H.J. Inc., 492 U.S. at 242-43* ("threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.").

BAEG, KABAJOUZIAN, AND NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS

*However*, "*where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business*, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, supra,* 187 F.3d at 243 (*citing H.J. Inc.,* 492 U.S. at 243).)

Here, Plaintiffs assume that Defendants have continued to engage in a pattern of activity that mirrors what Plaintiffs' experienced, instead of questioning whether there is actually any ongoing pattern of racketeering which is a necessary element of a RICO Act claim.  As stated, supra, the rule that requires fraud to be pleaded with specificity exists, in part, to "require the plaintiff *to conduct a <u>precomplaint investigation</u>* in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." (*Ackerman, supra,* 172 F.3d at 469 (emphasis added).)  Had Plaintiffs engaged in *any* precomplaint investigation, they would have discovered that BAEG made some regrettable mistakes during its startup, but learned from its errors, adjusted its business model, and now has more than 40 satisfied clients.

Plaintiffs have a claim against BAEG for unpaid rents.  BAEG has attempted to find a workable solution that apparently Plaintiffs did not find acceptable.  However, for Plaintiffs to allege a RICO claim under the circumstances, without conducting any precomplaint investigation to determine whether BAEG's startup errors have been rectified, smacks of an egregious and unwarranted quest for treble damages.

## V.   CONCLUSION

For all the foregoing reasons, the Court should grant Defendant's motion to dismiss Plaintiff's herein RICO claim.

Dated:  September 6, 2013

Respectfully submitted,
R.K. TANNER ASSOC. LLP

//s// Rod K. Tanner
Rod K. Tanner, counsel for Defendants Bay Area Equity Group, LLC; Anto Kabajouzian; and Lisa Nava

# CERTIFICATE OF SERVICE

I am employed in the County of San Mateo, State of California. I am over 18 and not a party to the within action. My business address is 1900 S. Norfolk Street, Suite 350, San Mateo, CA 94403.

On September 6, 2013, I served in the manner indicated below the following documents:

**DEFENDANTS BAY AREA EQUITY GROUP, LLC, ANTO KABAJOUZIAN, AND LISA NAVA'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER**

on the interested parties in this action:

| **PLAINTIFF COUNSEL** | TERRY L. BAKER<br>820 Bay Avenue Suite 230L<br>Capitola, CA 95010<br>831.476.7900<br>831.476.7906, fax<br>tbaker@consumerlawgroup.net |
|---|---|