TERRY L. BAKER (SBN 214365)
820 Bay Avenue, Suite 230L
Capitola, CA 95010
Tel:   (831) 476-7900
Fax:   (831) 476-7906
tbaker@consumerlawgroup.net

Attorney for Plaintiffs
LAWRENCE BROOKS, DARLENE LEONG
and LRB'S DIRECT, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LAWRENCE BROOKS and DARLENE LEONG, individually and as trustees of The 2003 Brooks/Leong Trust; and LRB'S DIRECT, LLC, a limited liability company,<br><br>            Plaintiffs,<br><br>vs.<br><br>BAY AREA EQUITY GROUP, LLC, a limited liability company; ANTRANIK KABAJOUZIAN, an individual; TERRANCE BROWN, an individual; LISA NAVA, an individual; ADRIENNE ROCHE, an individual; and DEREK SCHNEIDER, an individual,<br><br>            Defendants. | Case No. C 13-03325 PSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: October 15, 2013<br>Time: 10:00 a.m.<br>Dept.: 5 |

## I.  INTRODUCTION

This case is one of no less than nine cases filed in the last four months in both state and federal court against Bay Area Equity Group, LLC ("BAEG"), and its officers, directors, employees, etc. by various victims alleging fraud stemming from a ponzi scheme the defendants are running out of their offices in Santa Clara County, California. The scam is this: defendants are advertising to potential investors that they own refurbished homes in Detroit, Michigan that are currently being rented to tenants with

1 lease obligations.  Defendants are selling these refurbished homes to investors with the
2 promise that all rents are guaranteed for the first twelve months and that defendants will
3 manage the properties for the investors for a small fee.  Investors are also guaranteed a
4 rate of return of 15% or more.  In reality, the homes have not been refurbished, have no
5 tenants, are in shambles and uninhabitable, and have tax liens on them.  Defendants are
6 not managing the properties as promised and are not collecting and paying rents as
7 "guaranteed."  In some instances, BAEG is collecting the rents but not paying them to the
8 owners/investors.[1]

9       In each of the suits filed by the various victims, BAEG, by and through counsel
10 Tanner, has filed either a motion to dismiss (Rule 12(b)(6)) or a demurrer, using the cut
11 and paste method, and alleged that the complaints do not set forth sufficient facts to put
12 BAEG on fair notice of the plaintiffs' claims, and accuses plaintiffs' counsel in each case
13 of failing to conduct a precomplaint investigation.  It seems by now that BAEG would
14 know what all these scammed investors are complaining about - they aren't being paid as
15 promised, and did not receive the services they purchased.

16       Plaintiffs allege a RICO claim in this action because this is the exact kind of
17 activity the law was drafted to prevent.  Defendants have absconded with millions of
18 investors' dollars (life savings) and are now being forced to face the music.  Because
19 plaintiffs' Complaint is clear and alleges specifically what the defendants have done to
20 violate RICO, this motion should be denied.

21 **II.    LAW AND ARGUMENT**

22     **A.    RICO Is to Be Liberally Construed to Effectuate its Remedial Purposes.**

23 The Supreme Court of the United States has held:

> "RICO is to BE read broadly.  This is the lesson not only of Congress' self-consciously expansive language and overall approach, see *United States v. Turkette*, 452 U.S. 576, 586-587, 101 S.Ct. 2524, 2530-2531, 69 L.Ed.2d 246 (1981), but also of its express admonition that RICO is to 'be liberally

---

[1] This conduct forms the basis of plaintiffs' claims for conversion, constructive trust, breach of fiduciary duty, and unfair competition.

Brooks, et al. v. Bay Area Equity Group, et al.    -2-    OPPOSITION TO MOTION TO DISMISS

construed to effectuate its remedial purposes," Pub.L. 91-452, § 9004(a), 84 Stat. 947."

*Sedima, S.P.R.L. v. Imrex Co., Inc.* 473 U.S. 479, 497-498, 105S.Ct. 3275, 3285-3286 (1985).

### A. Plaintiffs must Only Show That the Mail and Wire Communications Were Made in Furtherance of the Conspiracy.

Defendants' first argument is that plaintiffs must *prove,* at the pleading stage, that each communication the defendants utilized to further their fraudulent enterprise must contain false or fraudulent misrepresentations. The law is clear:

> "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of fraudulent pretenses, uses the mails for the purpose of executing such scheme or artifice or attempting to do so is guilty of mail fraud. The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, *even if the mailing itself contains no false information*." [emphasis added]

*Jones v. Ram Medical, Inc.* 807 F.Supp.2d. 501 (2011).

The United States Supreme Court stated:

> "To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435(1954). It is sufficient for the mailing to be 'incident to an essential part of the scheme.' *ibid*., or "a step in the plot," *Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, L.ed. 706(1916)."

*Schmuck v. U.S.*, 489 U.S. 705 (1989).

The law is clear that plaintiffs do not need to allege, much less prove, in their Complaint, that each communication made by the defendants contained false or fraudulent information. Plaintiffs only need to allege that the defendants utilized the mail and wire to further their fraudulent scheme. Plaintiffs' Complaint clearly does so.

### B. Plaintiffs must Only Allege That the Fraudulent Enterprise Caused Their Damages.

The Supreme Court of the United States has held:

> "If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or

>property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional amorphous 'racketeering injury' requirement."

*Sedima* at 495.

Defendants have mischaracterized plaintiffs' allegations. Plaintiffs have not alleged that they have been damaged only "by non-payment of rents." (Motion to Dismiss, p. 6, l. 22 ½) Plaintiffs have alleged that they have been damaged by the defendants' fraudulent enterprise, perpetuated upon the plaintiffs using mail and wire fraud. Although plaintiffs agree that part of their damages are rents that defendants have collected and stolen, that is not the only damage plaintiffs allege.

Plaintiffs allege that the predicate acts of mail and wire fraud, utilized to further defendants' fraudulent enterprise, are the proximate cause of plaintiffs' damages. For example, Adrienne Roche emailed plaintiff Brooks sales agreements for properties in Detroit. This act alone is a predicate act that resulted in Brooks signing the agreements allowing defendants to get their hooks into the plaintiffs.

### C. Plaintiffs Have Clearly Alleged a Pattern of Racketeering Activity.

Plaintiffs' complaint specifically alleges at least 5 predicate acts of mail and wire fraud. (Complaint ¶¶ 109-113) Defendants have cited no case authority holding that 5 predicate acts of mail and wire fraud cannot constitute a pattern of racketeering activity. Indeed, "pattern of racketeering activity" requires only two acts of racketeering. *18 U.S.C. § 1961(5)*.

### III. CONCLUSION

Plaintiffs have specifically and methodically spelled out a viable RICO claim. As a result, defendants' motion should be denied. Alternatively, plaintiffs should be afforded leave to amend to cure any deficiencies the court may find in plaintiffs' complaint.

Dated:        September 19, 2013            Respectfully submitted


                                           /s/ Terry L. Baker
                                           TERRY L. BAKER
                                           Attorney for Plaintiffs