R.K. TANNER ASSOCIATES LLP
Rod K. Tanner (SBN 195479)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
Tel:  (650) 931-2520
Fax:  (650) 931-2521
rtannerlaw@comcast.net

Counsel for Defendants BAY AREA EQUITY
GROUP, LLC; ANTO KABAJOUZIAN;
And LISA NAVA

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LAWRENCE BROOKS and DARLENE LEONG, individually and as trustees of The 2003 Brooks/Leong Trust; and LRB's DIRECT, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BAY AREA EQUITY GROUP, LLC, a limited liability company; ANTRANIK KABAJOUZIAN, an individual; TERRANCE BROWN, an individual; LISA NAVA, an individual; ADRIENNE ROCHE, an individual; and DEREK SCHNEIDER, an individual,<br><br>Defendants. | Case No.: CV 13-03325-PSG<br><br>Date: October 15, 2013<br>Time: 10:00 a.m.<br>Dept.: 5<br>Judge: Hon. Paul S. Grewal<br><br>**BAEG, KABAJOUZIAN, AND NAVA'S REPLY TO OPPOSITION TO MOTION TO DISMISS** |

Defendants Bay Area Equity Group ("BAEG"), Anto Kabajouzian ("Kabajouzian), and Lisa Nava ("Nava"), (collectively "Defendants") hereby reply to Plaintiffs' opposition to Defendants' motion to dismiss Plaintiff's complaint.

### I.   INTRODUCTION

Plaintiffs' opposition brief, like their complaint, pleads the elements of a RICO claim in conclusory fashion.  However, because  Plaintiffs base their claim on alleged predicate acts of

wire and mail fraud, Plaintiffs must, pursuant to Rule 9(b), plead with specificity the elements of that alleged fraud, and must plead with specificity how that that alleged fraud was the proximate cause of Plaintiffs' alleged injuries. They fail to do so.

Plaintiffs further fail to plead any facts to show a pattern of racketeering activity that caused Plaintiff's alleged injury. Plaintiffs' introduction alleges a great deal of scandalous activity on the part of Defendants, but their allegations are mere conclusions of fact and law which, by law, are not admitted as true. (*Challenger v Local Union No. 1 of International Bridge, Structural, & Ornamental Ironworkers*, 619 F.2d 645, 649 (7th Cir. 1980).)

## II. REPLY TO OPPOSITION

### A. PLAINTIFFS' RICO ACT CLAIM FAILS BECAUSE PLAINTIFFS FAIL TO PLEAD THE PREDICATE ACTS OF MAIL AND WIRE FRAUD WITH THE REQUIRED SPECIFICITY TO SHOW THAT THE ALLEGED ACTS AMOUNT TO FRAUD.

Plaintiffs allege RICO ACT claims under each of Subsections 1962(a), 1962(b) and 1962(c) of the RICO Act. (Compl. ¶¶ 95-97.) Each of those Subsections requires a showing that Defendants have engaged in racketeering activity. Predicate acts that can show a pattern of racketeering include mail fraud and wire fraud, the predicates Plaintiffs allege.

Plaintiffs correctly assert that that the alleged predicate mailing or wiring need not be essential to the fraud or even contain misrepresentations itself. However, mail and wire fraud allegations in a RICO Act complaint *must be alleged with specificity, and the Plaintiffs' specific allegations regarding particular transactions must amount to fraud.* (*Lum v. Bank of America, 361 F. 3d 217, 223 (3d Cir. 2004).*)

> The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. A scheme or artifice to defraud need not be fraudulent on its face, *but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.*
>
> Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity the circumstances *of the alleged fraud* in order to place the defendants on notice of the precise misconduct with which they are charged,

R.K. TANNER ASSOCIATES LLP
1099 S. Norfolk Street · Suite 350 · San Mateo · CA · 94403 · Tel 650.951.2520 · Fax 650.951.2521

and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  Plaintiffs may satisfy this requirement by pleading the "date, place or time" *of the fraud*, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Plaintiffs also must allege who made a *misrepresentation* to whom and the general content of the *misrepresentation*.

In the present case, the RICO cause of action consists of the following allegation of mail and wire fraud:

[¶¶]  (a) Defendants used the U.S. mails and/or interstate wire facilities in connection with accomplishing the fraudulent scheme described in this Complaint.[1]  Each such use of the U.S. mails or interstate wire facilities was for the purpose of executing and furthering the fraudulent scheme or conspiracy described in this Complaint. [] Defendants mailed thousands of bank statements, advertisements for credit cards, contracts and promotional materials containing the fraudulent stated and artificially inflated interest rates [] in furtherance of their fraudulent scheme.

(b) Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures or sounds for the purpose of executing a scheme or artifice to defraud the plaintiffs, or for obtaining money or property of the plaintiffs [] by means of false or fraudulent pretenses, representations or promises as set forth in this Complaint []. Examples include interstate telephone calls and/or facsimile transmissions [] seeking to promote borrowing allegedly tied to the "prime rate," or to collect interest charges and loan payments allegedly due in connection with borrowing on the financial and credit instruments tied to the "prime rate," . . . .

[¶¶]  <u>The District Court properly ruled that these conclusory allegations do not satisfy Rule 9(b)</u>. They do not indicate the date, time, or place of any misrepresentation; nor do they provide an alternative means of injecting precision and some measure of substantiation into the fraud allegations because they do not identify particular fraudulent [] transactions.  Nor do these allegations indicate which defendant(s) made misrepresentations to which plaintiff(s).

(*Id.* at 223-225 (internal citations and punctuation omitted; italics added).)

---

[1] The "fraudulent scheme" pleaded in the complaint was:  17. [T]he Bank Defendants formulated and carried out a plan, scheme and conspiracy to fix and control the "prime rate" published by the outside indexes. Because these prime rate indexes had been incorporated into thousands of existing financial instruments as well as into new financial instruments written by the Banks, control of the prime rate published in the outside indexes would enable the Banks to effectively raise interest rates unilaterally on these credit instruments. . . .  18. [W]hile maintaining an appearance of following a prime rate set by neutral forces, the Banks entered into a plan, scheme, conspiracy and course of conduct designed to fraudulently and artificially inflate the "prime rate" published in the outside indexes by falsely reporting the Bank's individual prime rates . . . as their prime rates, [although the rates were] far in excess of [those] charged to their largest and most creditworthy customers. As a result [], the "prime rate" published by the outside indexes remained artificially high and [consumer credit rates] were fraudulently inflated.

The herein case is precisely on point with the *Lum* case. The only difference is that here the Plaintiffs do plead the "date, place or time" details of the alleged predicate *mails and wires*. However, Plaintiffs do not allege who, via the subject mails and wires, made a *misrepresentation* to whom and the general content of the *misrepresentation.* Therefore, Plaintiffs fail to plead how the subject mails and wires *"involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."* Thus, the instances of mail and wire use Plaintiffs plead are not sufficient to state a RICO Act claim because "they do not identify particular fraudulent transactions."[2] (*Id.* at 224.)

Plaintiffs appear to assert that their general allegations, which set forth what is essentially a contractual claim for $45,800 in unpaid rental income, plead a racketeering scheme, which they do not, and that said scheme is further evidenced by the alleged use of mail and wire. However, mail and wire *fraud* are requisite predicates to the RICO Act claim; mere use of mail and wire is not sufficient. Unless Plaintiffs can plead mail and or wire fraud with the specificity required by Rule 9(b), as described by the *Lum* court, Plaintiffs have no actionable RICO Act claim.

**B.   Plaintiffs' RICO Act Claim Fails because Plaintiffs Fail to Allege any Ongoing Pattern of Racketeering Activity that Caused the Injury They Allege.**

*1.   Plaintiffs Fail to Sufficiently Allege Use of Racketeering Funds in "The Establishment or Operation of" Interstate Enterprise.*

> Section 1962(a) effectively provides, "It shall be unlawful for any person to use or invest income derived from a pattern of racketeering activity in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The Circuit courts hold that:

> A section 1962(a) claim requires a showing that a defendant: (1) received income from a pattern of racketeering activity; (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise.

---

[2] Paragraph 110 of Plaintiffs' complaint alleges that defendant Terrance Brown misrepresented that he would have certain materials to present at a meeting with Plaintiffs. However, Brown is not one of the moving Defendants. Moreover, Plaintiffs do not allege how said misrepresentation was fraudulent instead of merely negligent, or that it was intended to deceive.

(*Rao v. BP Products North America*, Inc., 589 F. 3d 389, 398 (7th Cir. 2009).)  Federal courts hold that "*reinvestment*" of racketeering income into an enterprise will generally not support a RICO Act claim:

> If this remote connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated [regarding] corporation[s]. RICO's pattern requirement generally requires long-term continuing criminal conduct. [Citation.] [C]orporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act.

(*Brittingham v. Mobil Corp.*, 943 F. 2d 297, 305 (3rd Cir. 1991).)

Here, Plaintiffs plead conclusory allegations that, e.g., "BAEG was formed primarily as a ponzi [sic] scheme to fleece unwitting investors out of millions of dollars." (Compl. ¶ 89.)  Not only may the Court not admit the truth of such unsupported, conclusory allegations, Plaintiffs fail to allege how the alleged racketeering activity they plead – mail and wire fraud – produced income that Defendants invested in the operation of the alleged RICO enterprise, and how investment of such funds caused Plaintiffs' injury.

### 2. *Plaintiffs Fail to Sufficiently Allege Use of Racketeering Funds to "Acquire or Maintain ... Any Interest in or Control of Interstate Enterprise."*

> Section 1962(b) provides, "It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"[To prevail under] subsection (b), a plaintiff must show that his injuries were *proximately caused by a RICO person gaining an interest in, or control of*, the enterprise through a pattern of racketeering activity." (*Crowe v. Henry*, 43 F. 3d 198, 205 (5th Cir. 1995).)

Here, too, Plaintiffs make conclusory allegations that "Defendants, through the conduct described herein, acquired, maintained, and exercised control over the Enterprise. . . ." (Compl. ¶ 96.)  However, Plaintiffs fail to allege how any of the Defendants "acquired or maintained" control of the alleged enterprise via the mail and wire fraud Plaintiffs rely upon as predicate acts, and fail to show how any "gaining an interest in or control of" proximately caused their injuries.

### 3. Plaintiffs Fail to Sufficiently Allege that Defendants "Conducted or Participated" in an Interstate "Enterprise's Affairs Through a Pattern of Racketeering Activity."

Section 1962(c) provides, "It shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate [] commerce, to conduct or participate [] in the conduct of such enterprise [] through a pattern of racketeering activity . . . .

Courts have interpreted §1962(c) to require proof of a relationship – "to conduct or participate in the conduct of such enterprise's affairs" – between the defendant "person" and the "enterprise." The existence of such a relationship inherently means that the defendant "person" must be distinct from the "enterprise." (*See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("one speaks of employing, being employed by, or associating with others, not oneself").)

Here, Plaintiffs allege that "all defendants . . . constitute the 'Enterprise.'" (Compl. ¶ 95.) Thus, pursuant to Plaintiff's allegations, no Defendant can be distinct from the alleged enterprise, and thus Plaintiffs fail to allege a claim pursuant to Section 1962(c).[3]

Plaintiffs essentially allege that they chose to participate in a plan to purchase rental income properties, according to which plan Defendants were to collect and pay Plaintiffs the rents from the properties. Plaintiffs allege that Defendants failed to timely pay $45,800 of rent payments due, that some property taxes were not paid, that Plaintiffs terminated the special first-year contractual benefits after 12 months, and that the parties exchanged five mails and wires. Plaintiffs do not and cannot allege a RICO Act claim on those facts.

### III.   CONCLUSION

For all the foregoing reasons, the Court should grant Defendant's motion to dismiss Plaintiff's herein RICO Act claim.

Dated:  September 27, 2013

Respectfully submitted,
R.K. TANNER ASSOC. LLP

//s// Rod K. Tanner
Rod K. Tanner, Counsel for Defendants Bay Area Equity Group, LLC; Anto Kabajouzian; and Lisa Nava

---

[3] Plaintiffs do not allege a violation of Section 1962(d).

R.K. TANNER ASSOCIATES LLP
1099 S. Norfolk Street · Suite 350 · San Mateo · CA · 94403 · Tel 650.951.2520 · Fax 650.951.2521

# CERTIFICATE OF SERVICE

I am employed in the County of San Mateo, State of California. I am over 18 and not a party to the within action. My business address is 1900 S. Norfolk Street, Suite 350, San Mateo, CA 94403.

On September 27, 2013, I served in the manner indicated below the following documents:

**BAEG, KABAJOUZIAN, AND NAVA'S REPLY TO OPPOSITION TO MOTION TO DISMISS**

on the interested parties in this action:

| **PLAINTIFF COUNSEL** | TERRY L. BAKER<br>820 Bay Avenue Suite 230L<br>Capitola, CA 95010<br>831.476.7900<br>831.476.7906, fax<br>tbaker@consumerlawgroup.net |
|---|---|

BAEG, KABAJOUZIAN, AND NAVA'S REPLY TO OPPOSITION TO MOTION TO DISMISS