R.K. TANNER ASSOCIATES LLP
Rod K. Tanner (SBN 195479)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
Tel: (650) 931-2520
Fax: (650) 931-2521
rtannerlaw@comcast.net

Counsel for Defendant LISA NAVA

**UNITED STATE DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LAWRENCE BROOKS and DARLENE LEONG, individually and as trustees of The 2003 Brooks/Leong Trust; and LRB's DIRECT, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BAY AREA EQUITY GROUP, LLC, a limited liability company; ANTRANIK KABAJOUZIAN, an individual; TERRANCE BROWN, an individual; LISA NAVA, an individual; ADRIENNE ROCHE, an individual; and DEREK SCHNEIDER, an individual,<br><br>Defendants. | Case No.: CV 13-03325 PSG<br><br>Date: June 17, 2014<br>Time: 10:00 a.m.<br>Dept.: 5<br>Judge: Hon. Paul S. Grewal<br><br>**NAVA'S MAY 7, 2014 NOTICE OF MOTION AND MOTION FOR FRCP RULE 11 SANCTIONS** |

# TABLE OF CONTENTS

I.   RELEVANT FACTS .................................................................................................... 1

II.  ARGUMENT ............................................................................................................... 3

    A.   BAKER COMMITTED NUMEROUS MATERIAL VIOLATIONS OF RULE 11(b) WITH RESPECT TO LISA NAVA BY PRESENTING TO THE COURT THE HEREIN FAC. 3

    B.   BAKER VIOLATED RULE 8(a) IN ALLEGING THAT NAVA VIOLATED THE RICO ACT, THE ONLY CLAIM FOR RELIEF IN WHICH BAKER NAMED NAVA. ....... 4

    C.   BAKER VIOLATED RULE 9(b) IN NUMEROUS WAYS, ALLEGING FRAUD: (1) WITHOUT PARTICULARITY; (2) AS CONCLUSORY ALLEGATIONS; (3) UPON INFORMATION AND BELIEF; AND (4) AS ALLEGATIONS AGAINST MULTIPLE DEFENDANTS. ............................................................................................................... 5

        1.   Fraud Must Be Stated With Particularity In Order To Prevent Harm and Provide Notice. ................................................................................................................................ 5

        2.   Conclusory Allegations of Fraud Are Insufficient ........................................................ 5

        3.   The Claimant Must Make Separate Allegations Against Multiple Defendants. .......... 6

        4.   Pleadings Alleging Fraud Generally May Not Be Based on Information and Belief .. 6

    D.   BAKER'S VIOLATIONS OF RULES 8(a) AND 9(b) RESULTS IN PLAINTIFFS' FAILURE TO STATE A CLAIM FOR RELIEF FOR RICO ACT VIOLATIONS. ................. 7

    E.   BAKER ALLEGES THAT AGENCY AS A LEGAL CONCLUSION WITHOUT ALLEGING ANY ELEMENTS OF AGENCY OR ANY SUPPORTING FACTS. ................ 10

    F.   BAKER MISREPRESENTED FACTS ALLEGED IN SUPPORT OF CLAIMS OF FRAUD AND RACKETEERING ACTIVITY. ...................................................................... 11

    G.   SANCTIONS .......................................................................................................... 13

III. CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987 (1964) ................................................................ 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 4

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ................................................................ 5

*Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ................................. 5

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .............................................. 4, 10

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ......................................................................... 6

Fed R. Civ. Proc. 11(c) ................................................................................................................. 13

*Howard v. Superior Court*, 2 Cal. App. 4th 745 (1992) ................................................................. 9

*In Re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir.1994) .......................................................... 5

*Mesmer v. White*, 121 Cal.App.2d 665 (1953) ............................................................................ 12

*Mox, Inc. v. Woods* 202 Cal. 675 (1927) ....................................................................................... 8

*Peskin v. Squires*, 156 Cal. App. 2d 240 (1957) ............................................................................ 8

*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413 (C.D. Cal. 2012) ................................................ 5

*Pfau v. Mortenson*, 858 F. Supp. 2d 1150 (D. Mont. 2012) ........................................................... 6

*Roller v. California Pac. Title Ins. Co.*, 92 Cal.App.2d 149 (1949) ............................................ 12

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985) ................................................................ 5

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) ............................................................... 6

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002) .................... 6

*Unruh v. Truck Ins. Exch.*, 7 Cal. 3d 616 (1972) ........................................................................... 8

*Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3d Cir. 1997) .............................................................. 6

R.K. TANNER ASSOCIATES LLP
1099 S. Norfolk Street · Suite 350 · San Mateo · CA · 94403 · Tel 650.951.2520 · Fax 650.951.2521

**Rules**

Fed R. Civ. Proc. 8(a) ................................................................................................................. 4, 5

Fed. R. Civ. P 9(b) ........................................................................................................................ 5

Fed. R. Civ. Proc. Rule 9(b) .......................................................................................................... 5

Fed R. Civ. Proc. 11(b) ..................................................................................................... 3, 11, 14

R.K. TANNER ASSOCIATES LLP
1099 S. Norfolk Street · Suite 350 · San Mateo · CA · 94403 · Tel 650.951.2520 · Fax 650.951.2521

iii   Case No. CV 13-03325

NOTICE OF MOTION AND MOTION FOR FRCP RULE 11 SANCTIONS

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on June 17, 2014 at 10:00 a.m., or as soon thereafter as the parties may be heard, defendant Lisa Nava ("Nava") will move this Court, at the United States Courthouse located at 280 South 1st Street, San Jose, CA 9511, Courtroom 5, for the following:

Pursuant to the Federal Rules of Civil Procedure rules 11(b) and (c), Nava seeks an order granting Nava's motion for sanctions in the amount of $7050 against Plaintiffs' counsel Terry Baker; that amount is comprised of $5550 for 66 percent of Nava's attorney's fees, plus the $1500 settlement that Nava paid to Plaintiffs. Nava further requests that the Court award any additional sanctions the Court considers just and warranted in order to deter repetition of the conduct of Plaintiffs' counsel described herein.

This motion is based on this Notice of Motion and Motion, the included Memorandum of Points and Authorities, the accompanying declaration of Rod K. Tanner, the pleadings and papers on file in this action, and any oral argument the Court shall permit.

Dated: May 7, 2014

Respectfully submitted,
R.K. TANNER ASSOC. LLP

/s/ Rod K. Tanner_____
Rod K. Tanner, Counsel for
Defendant LISA NAVA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   RELEVANT FACTS**

Terry L. Baker ("Baker"), Plaintiffs' counsel, is an attorney of 16 years' experience. Herein, Baker presented to the Court a first amended complaint ("FAC"), the operative complaint that named Nava a defendant. The only well-pleaded allegations against Nava are that she was Nava was an employee of defendant Bay Area equity Group, LLC ("BAEG"), and that she replaced former BAEG employee Adriene Roche in the job of Transaction Coordinator. The remaining sparse allegations against Nava are sham, improperly pleaded, or both.

1                                                                Case No. CV 13-03325

NOTICE OF MOTION AND MOTION FOR FRCP RULE 11 SANCTIONS

1    Baker's FAC fails to allege facts sufficient to state any claim for relief against Nava.
2    Baker's claims against Nava are therefore not warranted by existing law, and are not supported
3    by factual contentions that have evidentiary support.  It cannot be fairly said that Baker did not
4    make the claims for the improper purpose of harassing Nava.

5    When Nava's counsel, Rod K. Tanner ("Tanner"), asked Baker why he named Nava as a
6    defendant, Baker responded, "we [Baker and the Plaintiffs] named everyone whose name we
7    knew." (Decl. Tanner ¶ 4.)  Tanner thereupon, and on at least three subsequent occasions,
8    requested that Baker dismiss the claim against Nava.  Baker refused each of Tanner's requests.[1]

9    On February 18, 2014, Nava filed a motion to set aside entry of default.  Therein, she
10   summarized her numerous meritorious defenses, many of which exposed Baker's presentations
11   to the Court of claims that are not warranted by existing law, and factual contentions that do not
12   have evidentiary support.  On or about February 19, Baker communicated an offer to dismiss the
13   claims against Nava for $10,000.  Not only did Nava not have $10,000, she chose not to be
14   coerced, having done nothing wrongful; she declined the offer.  On February 27, Tanner filed a
15   continuance of the hearing on Nava's motion to set aside entry of default, stating as grounds that
16   he required time to prepare a dispositive motion.  Later that same day, Baker communicated an
17   offer to dismiss the claim against Nava for $1500.  Nava still did not wish to be coerced and, on
18   March 4, declined the offer.  Literally one minute following Tanner's communication of the
19   declination to Baker, Baker engaged in gamesmanship by demanding that Tanner provide dates
20   for a deposition of Nava.  (Decl. Tanner ¶ 5.)  Nava and Tanner agreed that Tanner's appearance
21   at deposition would cost $1500 or more, and Nava decided to settle.  I.e., Baker's misuse of the
22   discovery process in order to coerce Nava into settling proved successful.

23   Nava sent her signed acceptance of the offer On March 5.  On March 6, Baker filed a
24   dismissal of Nava.  Inexplicably, Baker also filed on March 6 dismissals of all other named
25   defendants, and a settlement of the entire action.  Thus, of all the defendants named in the herein

---

[1] The FAC contains allegations sufficient to state a cause of action against defendant Derek Schneider; Baker dismissed the claims against Schneider.  Baker explained to Tanner that, "Schneider gave us some things."  Baker never requested that Nava "give him some things."

matter, Nava, the only defendant against whom Baker stated no proper allegations except that she happened to be employed by BAEG, is the only defendant against whom Plaintiffs obtained settlement – and that because she had no way to defend herself against Baker's improper allegations except to say that she had done nothing wrongful.

## II.   ARGUMENT

### A. BAKER COMMITTED NUMEROUS MATERIAL VIOLATIONS OF RULE 11(b) WITH RESPECT TO LISA NAVA BY PRESENTING TO THE COURT THE HEREIN FAC.

Federal Rules of Civil Procedure rule ("Rule") 11(b) provides, in pertinent part:

> "By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>   (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>   (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

In violation of Rule 11(b), Baker presented to the Court the FAC replete with claims involving Nava not warranted by existing law, and factual contentions involving Nava that have no evidentiary support.

The FAC names Nava as defendant only with respect to the sixth claim for relief for RICO Act violations.  The FAC also names Nava with respect to counts of conspiracy and aiding and abetting, which counts Baker labels claims for relief.

Although Plaintiffs do not directly allege fraud against Nava, Baker has informed Tanner that he believes that Nava participated in alleged fraudulent activity, which activity gives rise to Plaintiffs' discredited RICO Act claim for relief against Nava.  Nava therefore addresses the Rule 11(b) violations Baker committed in the FAC

Below, Nava discusses the rules of pleading and factual and legal misrepresentations Baker presented to the Court in the FAC. Following the discussions of Rules 8(a) and 9(b) is a table showing the violations of just those two rules. The Declaration of Rod K. Tanner (Decl. Tanner) includes that portion of the FAC that purportedly states a RICO Act claim for relief, the only claim for relief Plaintiffs allege against Nava. The portion included in Tanner's declaration shows the paragraphs that contain pleading violations as stricken, which paragraphs comprise nearly the entire claim for relief.

**B.   BAKER VIOLATED RULE 8(a) IN ALLEGING THAT NAVA VIOLATED THE RICO ACT, THE ONLY CLAIM FOR RELIEF IN WHICH BAKER NAMED NAVA.**

Rule 8(a) provides, in pertinent part: "A pleading that states a claim for relief must contain: ¶ (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

The U.S. Supreme Court holds, "while a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... . Factual allegations must be enough to raise a right to relief above the speculative level." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court interpreted the basic Rule 8 notice standard as requiring enough facts to state a claim to relief that is plausible on its face. (*Id.* at 555-56.)

Moreover, as does the Supreme Court, the Ninth Circuit holds, "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." (*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).)

Following the next section regarding Rule 9(b), Nava lists the violations of Rule 11(b) that Baker made by presenting to the Court t that Rules 8(a) and 9(b)

### C. BAKER VIOLATED RULE 9(b) IN NUMEROUS WAYS. ALLEGING FRAUD: (1) WITHOUT PARTICULARITY: (2) AS CONCLUSORY ALLEGATIONS: (3) UPON INFORMATION AND BELIEF; AND (4) AS ALLEGATIONS AGAINST MULTIPLE DEFENDANTS.

Because RICO Act claims arise in fraud, and because Baker's RICO Act claim is predicated on alleged mail and wire fraud, Rule 9(b) requirements for pleading fraud apply to Baker's RICO Act claim.

#### 1. Fraud Must Be Stated With Particularity In Order To Prevent Harm and Provide Notice.

"In alleging fraud [], a party must state with particularity the circumstances constituting fraud or mistake." (Fed. R. Civ. Proc. Rule 9(b).)

"The policy supporting Rule 9(b)'s heightened pleading requirements is that it 'protects potential defendants . . . from the harm that comes from being charged with the commission of fraudulent acts." (*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 416 (C.D. Cal. 2012).)

"Providing detailed notice to defendants also prevents plaintiffs from filing complaints as a pretext for the discovery of unknown wrongs." (*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).) "In deciding Rule 9(b) cases, courts should also be guided by the Rule's purpose to discourage the initiation of suits brought solely for their nuisance value." (*United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).)

"Fed. R. Civ. P 9(b) requires 'specific' allegations of fraud 'to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." (*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985).)

Rule 9 and Rule 8 must be read together. "Because Rule 8(a) requires the pleading of a plausible claim (citation omitted), we hold that claims of fraud . . . must, in addition to pleading with particularity, also plead plausible allegations. That is, the pleading must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the misconduct alleged." (*Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).)

#### 2. Conclusory Allegations of Fraud Are Insufficient

"Rule 9(b) requires particularized allegations of the circumstances constituting fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not constitute fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. ... [W]e [have] observed that plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that mere conclusory allegations of fraud are insufficient." (*In Re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-1548 (9th Cir.1994) (en banc).)

### 3. The Claimant Must Make Separate Allegations Against Multiple Defendants.

"Rule 9(b) does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." (*Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).)  "All RICO claims involving fraud must be alleged with particularity under Rule 9(b), and require plaintiffs to allege the time, place, manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme." (*Pfau v. Mortenson*, 858 F. Supp. 2d 1150, 1155-56 (D. Mont. 2012).)

Courts treat corporate defendants in a manner analogous to multiple defendants. Because corporations can act only through individual agents, a fraud complaint against a corporation must allege specific actions by those individuals.  "This Court has held consistently that in a fraud action against a corporation, 'a plaintiff must allege the names of the person who made the allegedly fraudulent misrepresentations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."

### 4. Pleadings Alleging Fraud Generally May Not Be Based on Information and Belief

"When Rule 9(b) applies, pleadings [alleging fraud] generally cannot be based on information and belief. (*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310-1311 (11th Cir. 2002).)  When the facts constituting fraud are particularly within the adverse party's knowledge or are otherwise inaccessible to the pleader, "a plaintiff may plead based upon information and belief, "but only if the pleading sets forth specific facts upon which

the belief is reasonably based.  Boilerplate and conclusory allegations will not suffice. (citation omitted)  Instead, plaintiffs must offer 'factual allegations that make their theoretically viable claim plausible."  (*Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319-320 (3d Cir. 1997).)

These requirements of Rule 9(b) are intended to ensure that pleaders thoroughly investigate all possible sources of information, including publicly available data, before pleading. (*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992) (complaint must state "nature and scope" of plaintiff's pre-filing efforts to obtain information needed to plead with particularity to ensure that all sources of information are investigated by plaintiff).

### D. BAKER'S VIOLATIONS OF RULES 8(a) AND 9(b) RESULTS IN PLAINTIFFS' FAILURE TO STATE A CLAIM FOR RELIEF FOR RICO ACT VIOLATIONS.

Below is a list of Rules 8(a) and 9(b) pleading violations committed by Baker for each of the listed paragraphs.  With respect to these paragraphs, Baker thus presented to the Court at least the following Rule 11(b) violations.  The Court should disregard each of these paragraphs of the FAC for the reasons stated, and should consider them to be violations of Rule 11(b) for having been improperly presented to the Court.

| | **GENERAL ALLEGATIONS** |
|---|---|
| FAC ¶ 43 | Fraud not pled with particularity; does not plead separate allegations against multiple defendants. |
| FAC ¶ 44 | Does not plead separate allegations against multiple defendants. |
| FAC ¶ 47 | Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact.* |

| | **ALLEGATIONS REGARDING RICO ACT CLAIM** |
|---|---|
| FAC ¶ 90 | Legal conclusion cast as factual allegation, conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact.* |
| FAC ¶ 92 | Legal conclusion cast as factual allegation; Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact.* |
| FAC ¶ 94 | Legal conclusion cast as factual allegation. |
| FAC ¶ 96 | Legal conclusion cast as factual allegation; Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact.* |
| FAC ¶ 97 | Legal conclusion cast as factual allegation; conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 98 | Legal conclusion cast as factual allegation conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |

| | |
|---|---|
| FAC ¶ 100 | Legal conclusion cast as factual allegation; conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 101 | Legal conclusion cast as factual allegation; Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact.* |
| FAC ¶ 102 | Legal conclusion cast as factual allegation. |
| FAC ¶ 103 | Legal conclusion cast as factual allegation; conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact.* |
| FAC ¶ 104 | Legal conclusion cast as factual allegation; conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 105 | Legal conclusion cast as factual allegation; Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 106 | Conclusory allegations of fraud. |
| FAC ¶ 107 | Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 108 | Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 109 | Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 115 | Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |
| FAC ¶ 116 | Conclusory allegation of fraud; fraud pled on information and belief, *although stated as fact;* does not plead separate allegations against multiple defendants. |

Baker's RICO Act claim for relief spans paragraphs 89 through 116.  As seen above, nearly every paragraph is pled with a violation of Rules 8(a) and 9(b).  Because the allegations are improperly pled, they state no RICO Act claim for relief.  Plaintiffs therefore state no claim for relief whatsoever against Nava.

Other than the RICO Act claim for relief, Plaintiffs allege only civil conspiracy and aiding and abetting against Nava.  "A conspiracy is a combination of two or more persons to accomplish by concerted action a criminal or unlawful purpose, or a lawful purpose by criminal or unlawful means." (*Peskin v. Squires* 156 Cal. App. 2d 240, 246(1957).).

> A civil conspiracy [] does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage. . . In

NOTICE OF MOTION AND MOTION FOR FRCP RULE 11 SANCTIONS

> such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. . . Conspiracy (the agreement) is ordinarily not actionable by itself. The cause of action arises out of some wrongful act committed by one or more of the conspirators, and if such a wrongful act is set forth the conspiracy averment is unnecessary to the statement of a cause of action.

(*Unruh v. Truck Ins. Exch.* (1972) 7 Cal. 3d 616, 631 (superseded by statute on other grounds.).)

To state a cause of action for conspiracy the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. (*Mox, Inc. v. Woods*, 202 Cal. 675, 677 (1927).) "It is a general and well-settled principle of law that, where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action." (*Id.*)

Plaintiffs' sixth cause of action for conspiracy restates their fraud claims but not their RICO Act claim.  Thus, Nava should not be named as a defendant thereto because Plaintiffs do not name Nava as a defendant with respect to the alleged fraud claims.  Nava cannot be liable for conspiracy regardless because Plaintiffs fail to state a RICO Act claim against Nava, the only cause of action which names Nava as a defendant.  I.e., one cannot be a conspirator in a civil wrong unless she participated in the civil wrong.

Plaintiffs' eighth cause of action for aiding and abetting is merely a different way to allege conspiracy.

> In the abstract, there may be a distinction between an aiding and abetting cause of action and one for civil conspiracy. However, while aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong.

(*Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992).).  Thus the same analysis applies to Plaintiffs aiding and abetting and civil conspiracy causes of action.  Nava cannot be held liable on either theory because Plaintiffs fail to plead her involvement in any tortious activity.

### E. BAKER ALLEGES THAT AGENCY AS A LEGAL CONCLUSION WITHOUT ALLEGING ANY ELEMENTS OF AGENCY OR ANY SUPPORTING FACTS.

In FAC paragraphs 9 and 94, Baker alleges that at all time relevant to the FAC, Nava was an agent of BAEG, Kabajouzian, and Brown. California law holds that three primary characteristics define an agency relationship: (1) an agent has the power to alter legal relationships between the principal and third persons; (2) an agent occupies the position of a fiduciary with respect to matters within the scope of the agency; and (3) the principal has the right to control the agent's conduct regarding matters entrusted to the agent. (*Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987, 999 (1964).)

Baker's FAC alleges in paragraph 12, "All acts of the agents, servants and employees of defendant BAEG, as alleged in this complaint, were performed by such agents, servants and employees within the course and scope of their agency and employment with BAEG and were authorized and/or ratified by BAEG." Other than begging the question why any agents or employees are named as defendants in the matter, this allegation arguably alleges that BAEG, as principal, had the right to control Nava's conduct.

However, Baker alleges no facts whatsoever with respect to whether Nava had to power to alter legal relationships between BAEG and third parties, nor any facts with respect to whether Nava occupied the position of fiduciary. It therefore should be reasonably concluded that Baker wished to state a theory of agency liability against Nava, but lacked the motivation, or the respect for the Court and the law to do so properly. Instead, Baker again asks the Court to "accept a legal conclusion cast in the form of a factual allegation, despite that the conclusions cannot reasonably be drawn from the facts alleged." (*Clegg, supra*, 18 F.3d at 754-755.) It should therefore be concluded that Baker's contentions of agency are not warranted by existing law, are frivolous, have no evidentiary support, and are thus subject to sanctions pursuant to Rule 11(b) and (c).

For the reasons stated above, the Court should disregard Baker's claim in FAC paragraphs 9 and 94 that Nava was an agent of BAEG, Kabajouzian, Baker, or any other individual or entity; see also, Decl. Tanner, Exh. A.

### F. BAKER MISREPRESENTED FACTS ALLEGED IN SUPPORT OF CLAIMS OF FRAUD AND RACKETEERING ACTIVITY.

Because Baker has stated that he believes the fraud alleged in the general allegations to support Plaintiffs' RICO claim, if any, against Nava, Nava also presents these pleading violations. For each of the violations, Baker pleads factual contentions for which he has no evidentiary support, without stating that he is likely to have evidentiary support.

Baker attached to the FAC he presented to the Court purchase agreements for the eight real estate purchases at issue. Each of those purchase agreements states that the real estate purchase includes: (1) a one-year maintenance warranty to *cover any general maintenance* not covered by the homeowner's insurance; and (2) guaranteed tenancy for 12 months, i.e., payment of gross rents on untenanted properties. (FAC Exhs. A-H, "Additional Conditions" (following ¶ 16).)

Each purchase agreement also includes an incorporation clause which provides, "It is [] agreed that no promises have been made other than those that are in writing and signed by all parties involved (no verbal agreements will be binding). (FAC Exhs. A-H, ¶ 13.)

Despite the foregoing provisions of each purchase agreement, Brooks alleges these legal conclusions cast in the form of factual allegations:

| | |
|---|---|
| FAC ¶ 17 | "Kabajouzian represented that BAEG's rental properties would provide [] at least a 15% return on investment." *The purchase agreements contain no such provision.* |
| FAC ¶ 19 | "The home warranty would ensure that if any property needed maintenance *or repair*, the warranty would cover the cost." *In fact, the warranty covered only general maintenance.* |
| FAC ¶ 20 | "After the first twelve months of ownership, BROOKS and LEONG could continue the rental protection plan at a cost of 10% of the rent collected from the property." |
| FAC ¶ 36 | "All of the properties . . . came with the . . . promise that BAEG managed the property directly . . . ." *The purchase agreements contain no such provision.* |
| FAC ¶ 39 | "On or about May 2012, plaintiffs learned that BAEG was not managing the properties in-house. The properties were being managed by third-party(s) management company that plaintiffs knew nothing about." *The purchase agreements contain no provision that BAEG would manage the properties itself; the third-party management company was a professional, Detroit-based property management company, superior in its capabilities to manage Detroit properties than BAEG, located in San Jose, California.* |
| FAC ¶ 41 | "In May of 2013, plaintiffs learned that the McKinney property |

NOTICE OF MOTION AND MOTION FOR FRCP RULE 11 SANCTIONS

|   |   |   |
|---|---|---|
|   |   | had been vandalized and numerous fixtures and appliances were broken or stolen. Plaintiffs learned that Newport Property 1 had been vandalized and was vacant. In essence, despite being told that BAEG was managing the properties, they were not." *The FAC alleges no facts to support the claims that an incident of vandalism of a low-income rental property in inner-city Detroit shows that the vandalized property was not being managed.* |
|   | FAC ¶ 41 | "Alternatively, to avoid the cost of repairing the vandalized homes pursuant to the terms of the home warranty, defendants failed to inform plaintiffs that the homes had been vandalized." *The terms of the home warranty cover the cost of general maintenance, only; it is difficult to believe that Baker, an attorney of 16 years, would consider catastrophic loss caused by vandalism to fall within the ambit of 'general maintenance'.* |

If Plaintiffs believed that the services they allege were promised to them were part of the purchase agreements, despite the integration clauses in said purchase agreements, it was their duty to ask for clarification. "[T]he courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract. (*Roller v. California Pac. Title Ins. Co.*, 92 Cal.App.2d 149, 154 (1949).)  This is especially true where the contractual obligation sought to be set aside has been executed by the complainant without the exercise of reasonable care. (*Mesmer v. W*hite, 121 Cal.App.2d 665, 674 (1953).)

Plaintiffs here executed eight identical purchase agreements without inquiring whether these provisions, not stated in the purchase agreements, were part of the bargain:  (1) the alleged 15 percent annual return on investment; (2) the alleged option to continue the rental protection plan after 12 months; (3) whether BAEG would attempt to manage the Detroit properties itself from California, or would contract with a professional Detroit property manager; (4) whether the home warranty plan included coverage for repair of catastrophic loss such as vandalism.  They cannot be heard to complain now that the foregoing provisions were not included in the purchase agreements.  It is difficult to believe that Baker, an attorney of 16 years, would not know that Plaintiffs had a duty to ensure these provisions they now claim "should have been" part of the agreements.

For the reasons stated above, the Court should disregard Baker's claims in FAC paragraphs 13 through 48 with respect to Plaintiffs' claim of benefits that were not provided in

1   the purchase agreements, which agreements included incorporation clauses.  Plaintiffs also
2   proximately caused some of the injury they claim by failing to purchase homeowner's insurance,
3   an unwise decision considering the properties they purchased are each low-income rental
4   properties located in inner-city Detroit.  It is difficult to believe that Baker, an attorney of 16
5   years, would ignore the incorporation clauses in each of eight purchase agreements that he would
6   believe that "general maintenance" included the cost of repairs for catastrophic loss such as
7   vandalism, and that he would not know that Plaintiffs' were negligent for failing to purchase
8   homeowner's insurance.

### G.   SANCTIONS

Rule 11(c) provides for sanctions for violation of Rule 11(b).  Specifically, the Rule provides, in pertinent part:

> (1) If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation. . . . ¶
>
> (4) A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include <u>nonmonetary directives</u>; an order to pay a <u>penalty into court</u>; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of <u>part or all of the reasonable attorney's fees and other expenses</u> directly resulting from the violation.

Baker's violations of Rule 11(b) are so numerous as to suggest that Baker did not consult the Federal Rules or any practice guide, or, if so, chose to disregard the rules in order to make a claim against Nava without grounds.  Considering the multiple violations, it is reasonable to wonder whether Baker respect for the Court or for the law.

Baker's violations are responsible for his hailing an innocent employee into Court, causing her emotional and financial stress, and culminating in her agreement to pay an unwarranted $1500 settlement merely to rid herself of Baker's unrelenting, irrational harassment.

Nava submits that the Court should impose harsh sanctions to ensure that Baker does not continue his strategy of "naming defendants merely because we have their names," without so much as informing them upon what grounds he claims fraud against them.

Considering the extent of Baker's violations, Nava would be within her rights to request that the Court order Baker to pay all of the attorney's fees and expenses directly resulting from Baker's violations, an amount totaling $9,915, and to order that Nava may rescind the settlement agreement in the amount of $1,500, a total of $11,415.

However, Nava proposes Baker pay $5550 for attorney's fees (66 percent of actual fees), plus the $1500 settlement Nava paid to plaintiffs, a total of $7050.

### III.   CONCLUSION

For all the foregoing reasons, the Court should impose sanctions in the amount of $7050 against Plaintiffs' counsel Terry L. Baker.

Dated:  May 7, 2014    Respectfully submitted,
R.K. TANNER ASSOC. LLP

/s/ Rod K. Tanner
Rod K. Tanner, Counsel for
Defendant LISA NAVA

### CERTIFICATE OF SERVICE

I, Rod K. Tanner, declare I am over 18 and not a party to the within action. My business address is 1900 S. Norfolk Street, Suite 350, San Mateo, County of San Mateo, California 94403.

On May 7, 2014, I served in the manner employed by the U.S. District Court electronic document filing service the following documents:

**NAVA'S NOTICE OF MOTION AND MOTION FOR FRCP RULE 11 SANCTIONS**

on the interested parties in this action:

| **PLAINTIFF COUNSEL** | TERRY L. BAKER<br>820 Bay Avenue Suite 230L<br>Capitola, CA 95010<br>831.476.7900<br>831.476.7906, fax<br>tbaker@consumerlawgroup.net |
|---|---|